19-3717 from the District of Minnesota, David Heinz v. Carrington Mortgage Services. Mr. Drewis, you could proceed. Thank you, Your Honor. May it please the Court, my name is Jonathan Drewis. I am here appearing on behalf of David Heinz, the Plaintiff Appellant in this matter. Our analysis begins, as it must, with the statute. There are two short statutes as part of the Fair Debt Collection Practices Act that we analyzed. The first is 15 U.S.C. 1692E. That statute reads, The second statute that we look at is 15 U.S.C. 1692F. That statute reads, Counsel, I have an initial question for you. Those statutes use different language. F uses to collect or attempt to collect, and E uses in connection with the collection of a debt. Does that difference matter for this case? I think it matters only slightly. I think there's a couple points. One, that it matters in that we know the legislature knows that it can do different things there, right? We know that I think the first section then is more broad because it says in connection with collection of a debt, rather than to collect or attempt to collect a debt. As far as it being more broad in connection with collection of a debt, that would encompass any of the three time periods that we focus on, whether it's the first loan modification, the time immediately before the foreclosure share of sale, or after. The unfair or unconscionable means portion, there's a more narrow construction there. I still think that all three apply, but I do think it's a slightly different standard between them because of that additional in connection with language. I think it's significant to note that the court below already acknowledged a lot of what we're trying to prove in the case. Straight from, this is page 26 of the addendum and of the lower court's order that reads, the court acknowledges that Mr. Hines fully cooperated with Carrington to try to stop it from foreclosing on the property. As such, Carrington's actions during the foreclosure process, when accepting all of Mr. Hines' allegations as true, might appropriately be described as unfair. When we look at that second statute and talk about what does it mean to be unfair in attempting to collect a debt, to collect or attempt to collect a debt, if foreclosure is debt collection, and the lower court already ruled that it's fair to say that that process was unfair, then I think that's all you need. At least that's all you need to get where we're asking the court to take us, which is to a jury. We believe that the facts are at least in dispute in this case so much that a jury should be ultimately the decision maker. The reason we believe foreclosure is debt collection is because the Supreme Court tells us it is. Literally. The quote is, foreclosure is a means of collecting a debt. That's from Obdusky v. McCarthy and Hollis, LLP, as cited in the brief. That was a 2019 Supreme Court case. So that's just recent law, and we know that the recent court made that decision. In that case, it reads, even if nonjudicial foreclosure were not a direct attempt to collect a debt, because it aims to collect on a consumer's obligation by way of enforcing a security interest, it would be an indirect attempt to collect a debt. So when we jump back to the statutes that we're talking about, is it in connection with collection of a debt? These workout discussions, these communications back and forth, the emails in the shadow and immediately in advance foreclosure? Yes, they're obviously in connection with collection of a debt because they relate directly to the foreclosure. Is it to the slightly different standard, perhaps, of the debt collector may not use unfair or unconscionable means to collect or attempt to collect a debt? I still think it falls within that because if you're using an unfair means to foreclose, then that's an unfair means of debt collection. Let me ask you about that. So Judge Kovats already identified one difference between the statutes. A second difference between the statutes is one. The second one, 1692-F, uses only the word means, I believe, whereas the initial one, 1692-E, uses representations or means. What are the differences, if any, between representations and means? So I think a representation is something that's overtly being said or at least implied. And I think in our case, in all three instances that we're talking about, we're really looking at means. We're looking at unfair means and deceptive means. And the reason I say that is because it almost seems as though, even though there are some explicit misrepresentations, it seems as though when Carrington is telling the Minnesota Attorney General and ceasing our client on it or sending to our client references that, you know, we've done everything we can to assist in the foreclosure process. We've used our best efforts. Okay. When it says we've used our best efforts to solicit the information from the debtor in this workout option and we see what actually happened, well, how can we objectively say using best efforts is a lie? How can we say that them saying that using their best, maybe their best efforts really are terrible? And in that sense, maybe it is misrepresentation, but it's at least a means that's inappropriate or unfortunate or unfair. When they tell my client, for example, in the October 20 letter, when they say, you have to start the loan modification over again from the beginning, even though we know at that time that he had a complete loan modification submitted. And they tell him, to him, you didn't submit these documents. Now, he knows at that time that he did submit them, obviously, and he's very frustrated by that. But now they're making him start the process all over again. It could be said that that's not a misrepresentation because he knows that they're wrong when they tell him that. But to throw him through these hoops again and gaslight him to make him think maybe he didn't submit it, those are inappropriate, unfair means or a deceptive means, perhaps not a deceptive misrepresentation. Does that answer this? Yeah. On the... Jumping back to the Obedesky case, I think that rings true for a lot of what we're looking at and what we're trying to figure out. When we look to... If we switch to the exhibits, I mean, I think there's a couple of key points here that really ring true as you read them. If you're able to switch to the addendum at page 36, this is part of a correspondence that was sent to the Minnesota Attorney General's office in advance of foreclosure sale. This is about three and a half weeks or so before the foreclosure sale. This is the one where we commonly cite the reference at the bottom of page 36. At that time, all the borrower needed to provide was a profit and loss statement for the time period of July 1, 2017, through September 6, 2017. Regrettably, since the date of my email, I have not... I have been advised by our loss mitigation department that the borrower's application remains incomplete. And we know that's false because we have the Attorney General's office facts to them showing the profit and loss statement. We also have his testimony that he provided that information to them. So that's objectively false. But then on that page 37, it continues and says, in order to review the borrower's eligibility for mortgage assistance, we need the borrower to provide and then list a full additional set of information that now they want because the whole process has to start over again. What's significant there is they're soliciting the financial information of my client. He is a debtor of theirs. They could, at this point, decide we don't want to complete this foreclosure or we want to complete this foreclosure in a different way where we seek a deficiency judgment at this point. And so at this point, we don't know what they're going to do or how they're going to proceed. And at this point, they're just seeking financial information from him to make that decision. As you continue in that letter, the next page, which is Agenda 38, this comes to the mini-Miranda section. Mini-Miranda is a colloquial term used for this common phrase in debt collection letters. But, I mean, they're literally writing in their letter, this communication is from a debt collector. Okay, so be it. There's no dispute that Carrington was a debt collector. But it says, and it is for the purpose of collecting a debt. For the district court, for the lower district court to say that this letter was not means to collect a debt, but for the letter itself to say it is for the purpose of collecting a debt. I'm not saying that that reference in the letter is necessarily binding, but I'm saying it at least survives summary judgment. When Carrington is telling you the elements that you're trying to show, at least that goes to a jury to determine, all right, was it a letter attempting to collect a debt? Unless the court has other questions, I'd reserve the rest of my time for Bob. Thank you. Thank you for your argument. Ms. Edley, you may proceed. Good morning, Your Honors. May it please the court? You can hear me, right? I'm unmuted. I'm Emily Edley, representing Carrington Mortgage Services. The unusual position taken by the appellant in this matter is that this court should find there were communications in connection with debt collection under the FDCPA. In spite of the fact that there were no statements in any of the communications that demanded payment, contained terms of payment, contained payment deadlines, threatened collection proceedings, or threatened any consequences of nonpayment. In this case, each and every communication at issue is informational in nature, ministerial in nature, and occurred either because proceedings were underway to enforce a security interest, or occurred because of appellant's request for loss mitigation and follow-up inquiries, and because Carrington had a legal duty to communicate in response. None of the communications seek payment, either directly or indirectly. Yet appellant has asked this court in the briefing to find a communication is deemed to be in connection with collection of a debt if it results in making the collection, quote, more likely, unquote. So this proposed test is contrary to this court's precedent, and it's not supported by the text of the FDCPA. The animated purpose test, the animating purpose test, is the test that's already been adopted by this court. It's fully adequate, and it's dispositive in this case. Under the test, as explained in McIver, communications and conduct are not considered made in connection with collection of a debt unless the purpose is the communication is to induce payment by the debtor. You know, the McIver court potentially agreed that this could include reporting a disputed debt to a consumer credit agency in that case, but it has to have been done as leverage to collect on the debt. It explicitly rejected the idea that any communication to a credit reporting agency by a creditor could be in connection with collection of a debt under the FDCPA. Counsel, let me ask you about the October 8th letter. This is the this is the one that concerns me the most. It says that the application for mortgage assistance has been canceled because not all the documents have been received. But then two sentences later, in the beginning of the next paragraph, it says, please note that if your loan is delinquent, collection activity may continue, including referral to foreclosure or foreclosure sale unless prohibited by applicable law. So it talks about the loan. It talks about the fact that your client's collecting, and it talks about foreclosure and foreclosure sales. Now, why isn't that enough to connect it to the debt collection activity? Because the purpose of that letter was still just to provide information. And I think that that language is similar to a mini Miranda. It's explaining what's going on with the status, but nothing in the letter tries to induce payment or get or or provide the amount that's overdue. It's just purposely informational. This is the status of the loan. This is what's happening. And under the animating purpose test, the court's looking for more. The court is looking for a statement that actually would create leverage here. Require us to ignore the plain text of the letter. In other words, are we supposed to get into the into the heads of whoever wrote this letter at the at the collection agency and try to figure out what they're animating purposes? Or do we read the words and try to figure out what the plain words would mean to somebody receiving the letter? I think the court is looking at it from the context of someone receiving the letter. The debtor that's receiving the letter. But in this situation, we would contend that that the purpose of this letter was to provide information in the book. But here's the problem. If I'm if I'm the ordinary reasonable person or I don't remember exactly how we phrased it. But if I'm the person reading this letter, the consumer that isn't that sophisticated, I'm thinking to myself, OK. They've just told me I haven't I haven't put all my documents in. But I have. And now they're telling my telling me my loan is delinquent and I'm possibly going to lose my house if I don't pay it. To me, that sounds like it's it's in connection with and, you know, at least raises a genuine issue of material fact as to, you know, under the under the 1692. Why am I wrong about that? Well, I think the problem there is that it's important to be clear about the status of the loan. It's it's disputed whether or not this borrower had actually provided all the information. That's an issue of fact that we don't go into because the court doesn't decide it or doesn't decide the case on that basis in this situation. But we do discuss in our briefing the fact that, you know, in fact, he hadn't he hadn't provided a profit of loss statement that was required. But so he's getting this letter back that's explaining the status of his loss mitigation effort. And the letter also, you know, I think reasonably explains that this is the status of your foreclosure. And don't believe that the fact that you need to submit further documents means that this foreclosure is is being put off. You can imagine which we're missing. Oh, I apologize. No, no. Go right ahead. I thought you were finished. If that language were missing, I'm sure we'd be facing a lawsuit under the FTC for misrepresenting the status of the loan and giving this borrower the impression that everything was good and everything had stopped. Well, let me ask you that. So there's two cases. They're both out of circuit. One is the Berwick, which was written by Judge Sykes. It's a Seventh Circuit case. And the other is the Gurdon, which is a Sixth Circuit case written by Judge Kaplitz. And those seem to suggest that when the false statement is linked to foreclosure or other adverse action against the borrower, that that's enough to state a claim. I might be overstating the whole thing just a tad. But what is your reaction to those two cases? Well, the Gurdon case. On a second. Regarding cases, one that I was going to talk about anyway, in the context of this more likely to result in collection letter. The example that that case gave was an example of a non collection letter that cross references a collection letter. I think the court has said explicitly in that situation, this is still a collection letter. It's cross referencing this other or this non collection letter is cross referencing the collection letter. Its purpose is really to collect. And I don't remember the details of the case right off. But just glancing at it. I think in that case, the situation was different because. This is the sorry, I apologize. I think in that case, there's more details about. I think in that case, there's more details about what they can do to avoid collection on a debt and the core examining the letter found that really it's true purpose was to get information or was to give information that would threaten or leverage the borrower. And basically scare them into paying the debt. Whereas in this case, we've got a situation where. In the less than a year period, it's a 10 month period from Carrington starting servicing the loan to their foreclosure. The borrower is basically creating a flurry of contacts by requesting loan multiple loan modification applications and submitting his documents in a piecemeal form. And the borrower is basically creating a flurry of contacts by requesting loan multiple loan modification applications and submitting his documents in a piecemeal form. The causes of service or then to need to follow up. There's well over 20 contacts that occur between Carrington and the borrower during this 10 month period. And those contacts are all relating to and many of those contacts are initiated by the borrower himself. And they're all relating to just giving him an update of the status of the law. And the FTC was really intended more to address intentional purposeful efforts that a lender chooses to engage in in order to collect on a debt. The whole purpose stated in the statute is to make sure that we don't have abusive debt collection practices here. These letters were initiated as a result of loan modification applications and follow up inquiries about the status of those applications. And they aren't purposeful directed efforts by the lender to collect on the debt. And therefore, there's no way that these communications can satisfy the animated purpose test. Because at a very minimum that has should actually require intent. Right. A lender can't be purposeful unless they have some kind of intent to obtain collection on the debt. Here we have, you know, the district court aptly commented during oral argument that the primary beef in this case is that the appellant contends it gave Carrington information and Carrington says they did not get it. The question is whether Carrington's responses to the borrower during that application process to determine whether it's appropriate to restructure the debt after a number of defaults constitutes a direct or indirect demand to collect the debt. It simply doesn't because under the statute, the purpose is to eliminate abusive debt collection practices. And it's certainly not to cause lenders to want to avoid offering loan modification options. There's a public policy reason why this statute needs to remain focused and tailored to actually encourage lenders to avoid abusive debt collection practices. Speaking of tailored, we have that we have the second statute, the 1692 F, which uses use the words unfair, unconscionable and the district court said, well, this seems really unfair. And so opposing counsel seizes on that language in the district court's order. Why, in your view, why isn't that observation? I won't quite call it a finding, but the observation itself, not enough to avoid avoid summary judgment here. Right. Because the although I would say that 1692 F provides an opportunity for a borrower to say that your overall conduct was unfair. Everything about the plaintiff's complaint in this case is focused on the misrepresentations. He alleged a little bit of conduct in the complaint, but during the briefing, it was all about the alleged misrepresentations that came out. I was also brought up in the briefing. So he's basing his conduct argument on the argument that there were misrepresentations. There's a serious question of fact as to that. But really, if if none of those correspondence, none of those letters were intended to collect on the debt, then it doesn't make sense to find that this this was an unfair or unconscionable means to collect on the debt. While we're on 1692 F, the following conduct is a violation of the section and then subsection six says taking or threatening to take any nonjudicial action to affect disposition of property if property is exempt by law. The allegations are here that the the twin tracks of renegotiating the loan and pursuing foreclosure violated Minnesota law. Why doesn't that section apply here? Because that's been abandoned during the briefing on summary judgment. And I think also abandoned on appeal there. There weren't citations to the Minnesota statutes. There was not a discussion or showing there was an allegation in the complaint that there was dual tracking that violated Minnesota law. But state law claims were dropped and state law was never used as a basis for for bringing up an FTCPA claim. In fact, I'm glad your honor mentioned that because I did want to touch on a task. I feel that, you know, plaintiff is ignoring really the crux of the of DOS key, which explains that. And the counter argument is it really doesn't matter if they're misrepresentations or not, because none of them were efforts to collect on the debt. Your honor, I see that my time is almost up. And unless there are any questions, I'll go ahead and yield the floor. Seeing none, thank you, Mr. Drewis, I think you have a five minutes for a bottle if I'm remembering correctly. Sure. I guess the two points that I obviously want to take the court's issues into consideration. So I'm happy to answer questions. But the two points that I think I'd like to address are references to illegality in the prior pleadings or argument and a discussion that a MacGyver and the narrow or how narrow of a stance there is there. Just on one of the last comments that illegality wasn't brought up in, you know, either in the appellate briefing or the prior briefing, I'd have to go to the prior briefing. But I know that at least on page 27 of our brief, we say the only inference that can be made by Carrington needing to delay not once but twice in responding to the request for rescission of the otherwise illegal foreclosure sale from Hines formally through the Minnesota Attorney General's office was to wait Hines out and freeze out his ability to bring a claim directly under Minnesota statutes 582.043. So there we're citing the dual tracking statute. We are referencing illegality. And I presume that we did that at the district court because I mean, that that was a 582.043 is something our firm regularly litigates and regularly talks about. And I would imagine that when you look at our briefing, we'll talk about that. On that issue, assuming that it was actually briefed, and we'll go back and look at that. Isn't this something you knew or that the plaintiff knew before the statute of limitations had expired? In other words, these letters all say that we're pursuing foreclosure and we're going to pursue foreclosure at the same time as a loan modification. And so this was known. And so doesn't that take a little bit of the unfairness or unconscionability out of that claim? I think when, well, I guess two points. One, yeah, he should have brought a lawsuit on time. The statute of limitations is extremely small. And it's hard to say his limitations are opposed. But you basically have to the end of the redemption period. So he has six months to bring that claim. And he didn't. And you ask why didn't he and his affidavit and the correspondence through the Attorney General's office shows that he didn't because he was expecting to have this sort of back and forth discussion. He was expecting rescission during that time. So he failed that. He screwed that up. And so part of the interesting question before the court is, all right, well, even if he doesn't have a claim under that statute, then does he have a claim under the FDCPA for the unfair behavior? So even if he doesn't bring that lawsuit timely, does his inaction on a state law claim preclude his ability from bringing an action under the FDCPA on similar grounds? And I think it doesn't. I think that the FDCPA still allows him to pursue a claim under that. On switching gears short sort of to MacGyver and the analysis of MacGyver. The courts and counsel were pointing out, and it's true that in MacGyver, they state the express purposes of the FDCPA, which are one, to eliminate abusive debt collection practices act, but also to ensure that those debt collectors. This is the quote from MacGyver, to ensure that those debt collectors who refrain from using abusive debt collection practices are not competitively disadvantaged. And that is also cited to the statute 1692E, 15 U.S.C. 1692E. The toward that purpose, then, you know, do we want Carrington and others like it taking these activities or do we want them restricted so that so that they don't and that the bad actors don't benefit by succeeding in their misrepresentations? Whether it's Carrington or not, there's a question in MacGyver of, all right, after the collections already happened, do you no longer have the ability to bring an FDCPA claim for misrepresentations after the fact? The argument that the court seemed to acknowledge below is that there has to be either an explicit or implicit request or demand for payment. And that's, and when MacGyver says that it's following Gurdon and cites Gurdon, and then you look at those three cases, as the court obviously did, Gurdon has a broader standard. It says that it's either the animating purpose to induce payment or that, or the activity, communication, whatever it may be, that aims to make the ultimate collection attempt more likely to succeed. And if it's an activity that creates it more likely to succeed, then it has that requisite connection. That's what Gurdon says. MacGyver said it was following Gurdon. We're not saying to disrupt MacGyver. We're saying MacGyver's being too narrowly construed and that this court should clarify that it's actually following Gurdon as it said it was, which would include both of those standards. I believe my time's up. Sorry if you had additional questions. Thank you so much for your time. Thank you. Thanks to both counsel for excellent oral arguments. The case is now submitted and an opinion will be issued in due course.